STANOLIND OIL & GAS COMPANY ET AL V. STATE OF TEXAS ET AL.

No. 7412. Decided November 22, 1939.
Rehearing overruled December 19, 1940.
Second Motion for Hearing overruled January 29, 1941.
(133 S. W., 2d Series, 767.)
(145 S. W., 2d Series, 569.)

6

*Turner, Rodgers, Winn & Sellers,* of Dallas, *Clay Tallman* and *Donald Campbell,* of Tulsa, Okla., for Stanolind Oil & Gas Company, *Geo. T. Wilson, of San Angelo,* and *Henry H. Brooks,* of Austin, for Cardinal Oil Company and Dogie Oil Company, *Collins, Jackson & Snodgrass,* of San Angelo, *Cantey, Hanger, McMahon, McKnight & Johnson, Ira Butler, Gillis A. Johnson* and *Warren Scarborough,* all of Fort Worth, for M. W. Bryant and John H. Tyler and wife, all plaintiffs in error.

Every fact, right or matter in issue directly adjudicated or necessarily involved in a prior judgment is conclusive in a subsequent suit between the same parties involving, and necessarily affecting the same subject matter, and in a suit by the State attempting to declare certain land vacant, the State and its privies are precluded from asserting the existence of a vacancy under the doctrine of res adjudicata, estoppel by judgment, judicial estoppel and stare decisis, as laid down in previous judgments, and particularly as in the case of Stanolind Oil & Gas Company v. State of Texas, 129 Texas 547, 101 S. W. (2d) 801. State v. Ortiz, 99 Texas 475, 90 S. W. 1084; Nichols v. Dibrell, 61 Texas 539; Oklahoma v. Texas, 256 U. S. 70, 71 Sup. Ct. Rep. 420; 65 L. Ed. 831; Rio Bravo Oil Co. v. Hebert, 130 Texas 1, 106 S. W. (2d) 242; Cain v. Balcom, 130 Texas 497, 109 S. W. (2d) 1044; Anderson-Clayton Co. v. State, 122 Texas 530, 62 S. W. (2d) 107.

The Commissioner of the General Land Office has authority to direct a surveyor to return field notes to his office and to approve same, and when approved they constitute valid and correct field notes of the land in question and when applied to the ground for the true location of that survey, the vacancy contended for in this suit cannot possibly exist. Miller v. Yates, 122 Texas 435, 61 S. W. (2d) 767; Holmes v. Yates, 122 Texas 428, 61 S. W. (2d) 771; Coleman County v. Steward, 65 S. W. 383; Chamberlain v. Pybas, 81 Texas 511, 17 S. W. 50.

*William McCraw*, Former Attorney General, *Gerald C. Mann*, Attorney General, and *H. Grady Chandler*, Assistant Attorney General for the State, defendant in error.

The State, having never parted with the title to the surface of the area sued for, has sufficient interest, title and right of possession to authorize it to maintain a suit in trespass to try title. Rains v. Wheeler, 76 Texas 390, 13 S. W. 324; Seamans Oil Co. v. Guy, 115 Texas 93, 100, 276 S. W. 424; Taylor v. Higgins Oil & Fuel Co., 2 S. W. (2d) 288.

*J. B. Dibrell, Jr.*, of Coleman, *John Sayles*, and *Wagstaff, Harwell, Douthit & Alvis*, all of Abilene, *Bryan, Suhr, Bering & Bell* and *E. H. Suhr*, of Houston, filed briefs as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit was filed by the State against the Stanolind Oil & Gas Co., the Cardinal Oil Co., the Dogie Oil Co., George D. Morgan, J. H. Arthur, Bob Reid, H. W. Compton, M. D. Bryant,

J. H. Tyler, Eulia B. Tyler, and V. C. Hogan, to recover a tract of land 122.5 varas wide by 1208.9 varas long, lying between the west line of Tyler Survey No. 1 and the east line of T. C. Ry. Co. Survey No. 104, in Pecos County, Texas. It was contended by the State that the land sued for was vacant, but was subject to the rights of certain defendants to purchase or lease same for oil and gas producing purposes; and all the parties asserting such rights were made parties to the suit, so that, in addition to establishing that the land was not included in prior grants, the relative rights of certain of the defendants might be determined, as between themselves and as between themselves and the State. Upon the trial of the case, and based upon an instructed verdict, the trial court entered judgment. This judgment provided in effect as follows:

(a) That the State recover the entire tract of 122.5 varas wide by 1208.9 varas long.

(b) That the application for lease upon such land on behalf of Stanolind Oil & Gas Co. was invalid.

(c) That Bryant had a prior right to obtain from the State a mineral lease under Article 5421c, Vernon's Civil Statutes, upon the most westerly and most northerly part of that area recovered by the State. The area awarded to Bryant was a strip off the west side thereof 50.9 varas wide east to west and along the north side of the area of 45.9 varas wide from north to south.

(d) That the Cardinal Oil Co. had a valid lease upon a strip approximately 52.6 varas wide at the south end and 50.3 varas wide at the north end, immediately east and south of the area awarded to Bryant; which lease had been granted upon the applications of Bob Reid and J. H. Arthur.

(e) That the Dogie Oil Co. had a valid lease upon an area 19 varas wide and immediately east of the Cardinal Oil Co. area. Both the Dogie Oil Co. and the two Cardinal Oil & Gas Co. leases together extended north and south 1163 varas, thus leaving the strip along the north edge of the area recovered by the State 45.9 varas wide, which was included in the area awarded to Bryant. (1208.9 minus 1163 leaves 45.9.)

(f) That Tyler was not entitled to assert a prior right to purchase the area awarded the State under his application for inquiry under Article 5323, Revised Civil Statutes, and that he was not entitled to a lease upon the area, or any part thereof, under the 1931 Leasing Act.

From this judgment both the Stanolind Oil & Gas Co. and Tyler duly perfected appeals to the Court of Civil Appeals;

and that court affirmed the judgment of the trial court, denying the application of Tyler to purchase and to lease, and also denying the Stanolind application to lease,—and in all other respects reversing and remanding the cause. 114 S. W. (2d) 699.

Stanolind Oil & Gas Co. contends that the trial court erred in not sustaining its plea in abatement grounded upon the nonjoinder of certain parties claiming interests in Surveys 104 and 34 1/2. The State and its privies contest this plea on the following grounds: (1) It was not filed in due order of pleading, and was waived; (2) it was defective, in that it did not allege the nature and extent of the interest claimed by the nonjoined parties; (3) the plea was properly overruled, because no evidence was offered in support of it; and (4), that as to the Stanolind Oil & Gas Co. the overruling of such plea was harmless.

The following undisputed facts appear: "On May 13, 1935, Stanolind Oil & Gas Co. was served with citation, and on February 21, 1936, it filed its original answer; and no mention was made of a nonjoinder of parties. On April 11, 1936, the Stanolind Oil & Gas Co. filed an amended answer to the merits, without mentioning this ground of abatement. On April 20, 1936, that Company presented, offered evidence in support of, and procured a ruling upon its motion for continuance, before presenting this plea in abatement, which was not filed or presented until April 20, 1936.

The Stanolind Oil & Gas Co. in its supplemental plea in abatement for nonjoinder of certain parties as defendants herein, alleged in substance as ground therefor that James Cornell and others "now assert the ownership of interests in and to section 104."; that Ida Mae Ramsey and others "assert and claim an interest to the minerals in and under section 104"; that Marathon Oil Co. holds and asserts an oil and gas lease upon a portion of Section 34 1/2; and that the Yates Estate holds and asserts title to Section 34 1/2.

■ The action of trespass to try title embraces all character of litigation that affects the title to real estate. Hardy v. Beaty, 84 Texas 562, 19 S. W. 778; 31 Amer. St. Repts. 80; Moody v. Holcomb, 26 Texas, 714, 719; Titus v. Johnson, 50 Texas 224, 237; Rains v. Wheeler, 76 Texas 390, 393, 13 S. W. 324; Edrington v. Butler (Civ. Appls.), 33 S. W. 143; 7 Tex. Jur., p. 246, sec. 35, and cases cited.

The following articles of the Revised Civil Statutes define who shall be proper parties in a trespass to try title suit:

Article 7370 reads: "The defendant in the action shall be the person in possession if the premises are occupied, or some person claiming title thereto in case they are unoccupied."

Article 7371 reads: "The plaintiff may join as a defendant with the person in possession, any other person who, as landlord, remainderman, reversioner or otherwise, may claim title to the premises, or any part thereof, adversely to the plaintiff."

■ It is also well settled that disputes as to boundaries may be determined in trespass to try title suits. Weaver v. Vandervanter, 84 Texas 691, 19 S. W. 889; Mahurin v. McClung (Civ. Appls.), 34 S. W. 1046; Roundtree v. Haynes (Civ. Appls.), 73 S. W. 435; Nye v. Hawkins, 65 Texas 600; 7 Tex. Jur., p. 246, sec. 35.

■ In 32 Tex. Jur., p. 13, sec. 9, it is said: "A necessary party is one who is so vitally interest in the object or subject matter of the suit that a valid judgment cannot be rendered without his presence."

■ In 32 Tex. Jur., p. 34, sec. 21, it is said: "The question of proper joinder often rests in the discretion of the court, the exercise of which will not be revised unless palpable abuse is shown."

An objection that there is a defect of parties should ordinarily be raised at the earliest opportunity; otherwise the objection will be waived. However, an exception to this rule exists when it is shown that there is a nonjoinder of essential parties. 32 Tex. Jur., p. 140, sec. 98.

The Stanolind Oil & Gas Co. contended that the strip of land involved here was vacant public land, and it claimed a preference right to lease same from the State. The land was surveyed and its four corners marked on the ground by the Stanolind Oil & Gas Co. That Company by its acts and admissions represented that it was vacant land. The State also claimed that the land was vacant and subject to lease, and filed this suit against the defendants. The nature of the suit was to determine, as between the parties in this suit, the respective rights of the parties claiming such land or parts thereof. The Stanolind Oil & Gas Co. claimed it all by virtue of its application. Tyler claimed the land by virtue of his letter of inquiry. And other parties claimed certain rights in part of such land, as above described.

■ This is not a suit for partition, nor is it a suit for the reformation or a cancellation of the least to Stanolind Oil & Gas

Co. on Survey 104. Nor is the State attacking any lease executed by it on this land. The State, as plaintiff, and Bryant and others, as cross acting defendants, seek judgment in the statutory action of trespass to try title against the Stanolind Oil & Gas Co., and none of the others not parties to this suit will be found by any judgment rendered here against the Stanolind Oil & Gas Co. Stewart v. Kemp, 54 Texas 248; Heirs of Nancy Tevis v. William E. Armstrong and J. J. French, 71 Texas 59, 9 S. W. 134; Alford v. Cole, 65 S. W. (2d) 813; Johnson v. Moss, 108 S. W. (2d) 1110. This is especially true since the decision here in no way adjudicates the rights of those not parties to this suit.

It clearly appears that the parties suggested are not indispensable parties to this suit, and that their claims or rights in this land are not of such a nature that a final decree, fixing the rights and interests in the land of all parties before the court, would be wholly inconsistent with equity and good conscience. It was the duty of Stanolind Oil & Gas Co., in filing such plea in abatement suggesting the nonjoinder of certain parties as defendants, to give the court definite allegations as to the parties and the interests claimed by them. State v. Goodnight, 70 Texas 682, 11 S. W. 119; Good v. Stanbury (Civ. Appls.), 240 S. W. 960.

Judge Gaines, in rendering the opinion of this Court in the Goodnight Case, in discussing the essential allegations of a plea in abatement for the nonjoinder of parties, said: "A plea in abatement should not only show the grounds upon which the suit should be abated, but should also give the plaintiff a better writ—that is, it should not only show that the suit is improperly brought but also how it should have been brought. The plea in this case says that others are interested in parts of the fences, but does not allege in what parts each have an interest, nor does it state the nature of that interest. A pleading should always state facts and not conclusions of law, and a plea in abatement, which sets up a nonjoinder of parties defendant should show definitely and specifically the nature and extent of the interest of such person, who is claimed to be a necessary party."

Article 1992 of the Revised Civil Statutes reads: "Before a case is called for trial, additional parties, necessary or proper parties to the suit, may be brought in, either by the plaintiff or the defendant, upon such terms as the court may prescribe; but not at a time nor in a manner so as to unreasonably delay the trial of the case."

■ The rule is generally accepted that appellate courts will not reverse the rulings of the trial court relating to nonjoinder of parties, when it appears that no prejudice to the complaining party has resulted. 32 Tex. Jur., p. 140, sec. 99. Thus it will be seen that the trial court, in the exercise of its power and discretion, overruled the plea in abatement for nonjoinder of parties. In view of the record in this case and the judgment rendered, if it could be said that it was error for the trial court to overrule such plea, such alleged error was harmless; because it is not shown that by such ruling the rights of the Stanolind Oil & Gas Co. in the land involved here have been prejudiced. This contention is overruled.

The State in substance contends that the Court of Civil Appeals erred in reversing and remanding this cause for a new trial upon the issue of vacancy, and in holding that the trial court had erred in not submitting to the jury an issue as to the true location on the ground of the S. E. corner of Survey 70, among others, for the following reasons:

1. Because such issue was not raised by the evidence before the trial court, in that the only surveyor who testified with respect to the location of said corner was H. L. George, the employee of the Stanolind Oil & Gas Co., and its alter ego in this transaction, and because of the acts and admissions of the Stanolind Oil & Gas Co. of the correctness of such location by its application for lease of this land.

2. Because the Stanolind Oil & Gas Co., neither in the trial court nor in this Court, until after the submission of this cause, contended that the car spring corner was the true southeast corner of Survey 70; and thus the Stanolind Oil & Gas Co. had waived or abandoned any right to claim error because of the failure to submit such issue to the jury.

3. Because the testimony of the witness George, as to the location on the ground of the S. E. corner of Survey 70, and the application for lease previously filed by the Stanolind Oil & Gas Co., in which such location of such corner was accepted and recognized by it, constituted an admission by the Stanolind Oil & Gas Co. that this area was vacant land, which justified and compelled the action of the trial court in directing a verdict against the Stanolind Oil & Gas Co.

This land is part of the Yates oil field in Pecos County. Since the discovery of oil in that field, many cases have arisen relative to boundary lines. Many surveys have been made, and

many sketches and maps of the land in this vicinity have been made and used in the trials of the cases. Some of the maps and sketches have been inserted in the opinions of courts in the following cases: Pandem Oil Corporation v. Goodrich, Tex. Civ. App., 29 S. W. (2d) 877; Turner v. Smith, 122 Texas 338, 61 S. W. (2d) 792; Stanolind Oil & Gas Co. v. State, 129 Texas 547, 101 S. W. (2d) 801.

The following sketch is inserted in this opinion so that the

R. C. S. L. Nº 3

reader may see the lines and corners of the land discussed herein. However, it does not purport to show accurately the lines of the various other surveys shown therein.

The I. & G. N. river surveys in Block 1 were projected from corners placed along the Pecos River by Jacob Kuechler. Runnels County School Land Survey No. 3 and T. C. Ry. Co. Surveys 101, 102, 103, and 104 are office surveys. T. C. Ry. Co. Survey 101 was patented on corrected field notes for 407 acres on April 14, 1894. Corrected field notes for Survey No. 102 were filed in the land office March 3, 1893. The adjoining survey No. 103 was patented on corrected field notes April 14, 1894. Adjoining Survey No. 104 was patented on corrected field notes for 407 acres on August 7, 1929. Patent was issued to Survey No. 34 1/2 April 13, 1927.

On December 15, 1926, Tyler filed in the land office a letter of inquiry, under Article 5323 of the 1925 Revised Civil Statutes, looking to the purchase of an area which he said was vacant State land east of Section No. 104. The Land Commissioner answered Tyler's inquiry, to the effect that there was no vacancy in that area. Tyler filed suit against the County Surveyor of Pecos County, under Article 5323, to establish the vacancy. This suit was never tried. In 1933 the Land Commissioner, on advice from the Attorney General, changed his ruling as to a vacancy, and suggested that Tyler have a surveyor return field notes of the area. Field notes were returned, and patent was issued to Tyler May 31, 1934, covering a tract of land 114 varas wide and containing 24 1/2 acres. Tyler accepted the patent, and proceeded to develop the land for oil.

On January 29, 1934, V. C. Hogan made application for survey to lease an area of land. This application was filed in the general land office January 30, 1934. Hogan was finally notified by the Land Commissioner on April 12, 1935, that an oil and gas lease would be issued to him upon certain terms set out in the letter of notification. The lease was issued to Hogan April 12, 1935, and Hogan assigned the lease to George D. Morgan, and Morgan assigned the lease to Dogie Oil Co.

Bob Reid filed an application for survey to lease the area afterwards included in a lease to Cardinal Oil Co. on November 5, 1934, in the office of the County Surveyor of Pecos County, and on January 23, 1935, in the general land office. Finally the field notes were filed under the Reid application in the general land office on January 23, 1935. Corrected field notes under this application were filed in the land office on March 19, 1935. Reid's application was assigned to H. W. Compton, and Compton assigned his rights under this application to Cardinal Oil

Co. A mineral lease was issued under the application and survey on March 19, 1935, to the Cardinal Oil Co.

J. H. Arthur filed application for survey to lease the area afterwards included in an oil and gas lease to Cardinal Oil Co. This application was filed with the county surveyor, and later in the general land office, January 23, 1935. Field notes were filed in the county surveyor's office under the Arthur application and in the general land office on March 9, 1935. Corrected field notes were filed in the county surveyor's office and on March 19, 1935, in the general land office. J. H. Arthur assigned his rights to H. W. Compton, and Compton assigned his rights to Cardinal Oil Co. The corrected field notes were approved, and a mineral lease was issued by the State to Cardinal Oil Co., covering the Arthur tract, on March 19, 1935.

All cash payments provided for in the three leases have been made. A well was finished on the tract covered by the Hogan lease in August, 1935, as a producer. At the time of the trial wells had been finished on both the Reid and the Arthur tracts; now held by the Cardinal Oil Co.

Stanolind Oil & Gas Co., through H. L. George, a licensed State land surveyor, filed an application for survey to lease in the county surveyor's office September 26, 1934, and in the land office January 23, 1935. Field notes prepared by George for Stanolind Oil & Gas Co. were filed with the county surveyor January 16, 1935, and in the land office January 21, 1935.

M. D. Bryant filed an application with the county surveyor on January 14, 1935, and in the land office April 24, 1935. Field notes were filed for Bryant with the county surveyor on April 2, 1935, and in the land office April 24, 1935.

Tyler filed an application for survey to lease March 18, 1935, with the county surveyor. This was filed in the land office February 3, 1936.

Summarized, it shows that Tyler first filed with the land office a letter of inquiry on December 15, 1926. It is undisputed that field notes were returned and patent was issued to Tyler May 31, 1934, covering 24 1/2 acres, and that Tyler accepted the patent for such land.

The next application in point of time was filed by Hogan, and the lease issued under his application dated April 12, 1935.

Next to the Hogan application in point of time was the application filed by George for Stanolind Oil & Gas Co.

Next in point of time after the Stanolind Oil & Gas Co. application, and the next valid application after the Hogan application, was the Arthur application, filed with the county surveyor and in the land office January 23, 1935. A mineral

lease was issued under this application by the land office, dated March 19, 1935, to the Cardinal Oil Co.

The Bob Reid application was filed with the county surveyor and in the land office January 23, 1935. The Reid and Arthur applications each cover specific land, and do not conflict with each other. Lease was issued under this application March 19, 1935, to the Cardinal Oil Co.

Next after Reid's application for survey to lease, Bryant filed an application with the county surveyor and with the land office April 24, 1935. His field notes were filed with the county surveyor and in the land office April 24, 1935.

Next in point of time after the Bryant application, Tyler filed his application for survey to lease with the county surveyor March 19, 1935, and placed it in the land office August 14, 1935. Both the Bryant and the Tyler applications reached the land office after the Reid and the Arthur and the Hogan leases had all been issued. The land covered by these leases was appropriated by the applications for a survey to lease.

The State filed this suit against the Stanolind Oil & Gas Co. and others as described above, and alleged that it was the owner of the following described property:

"Beginning at the Southwest corner of the John H. Tyler Survey No. 1, an angle iron in the most southerly north line of the Yates Survey No. 34 1/2, which said angle iron is 114 varas west and 215 varas south of a mound of stone on a flat rock marked 'SE 104 D O D Oct. 15, 1918';

"Thence North with the West line of the said John H. Tyler Survey No. 1, 1208.9 varas to the Northwest corner of said Tyler Survey, an iron in a mound of stone for the Northeast corner of this vacant area sued for;

"Thence West 250 varas with a westward projection of the North line of the said John H. Tyler Survey No. 1 to the intersection of that projection, with the East line of Survey 104, T. C. Ry. Surveys, a point for the Northwest corner of this vacant area sued for;

"Thence South with the East line of said Survey 104, on south with a southward projection of said East line of Survey 104 to its intersection with the North line of the said Yates Survey No. 34 1/2, a point for the southwest corner of this vacant area sued for;

"Thence East with said North line of Survey 34 1/2 to the place of beginning at the southeast corner of the vacant area sued for;

"For convenience in making the allegations hereinafter set forth, the above described tract of land includes three tracts of land hereinafter described, and also an additional area to the west of said following three described tracts of land:·

"FIRST TRACT: The North one-half of the following described tract: A strip of land being immediately West of the third tract hereinafter described, and being approximately 50 varas wide east and west, and known as the Arthur filing.

"SECOND TRACT: The South one-half of the following described tract: A strip of land being immediately west of the third tract hereinafter described, and being approximately 50 varas wide east and west, and known as the Bob Reid filing.

"THIRD TRACT: A strip of land bounded on the east side of the west line of the John H. Tyler Survey No. 1, being approximately 19 varas wide from east to west, and known as the Hogan filing."

The Stanolind Oil & Gas Co. owns the mineral lease on Survey 104 or part thereof, and there is no dispute about the west line of Tyler No. 1. Thus we are called upon to decide the rights of the parties to this suit in the tract of land sued for by the State. The controlling question is: Is the land in controversy part of Survey 104, or is it vacant land? If it is part of Survey 104, it is not vacant public land. If it is vacant land, the Stanolind Oil & Gas Co. claims same by virtue of having applied for the lease thereof. Bryant, Cardinal Oil Co., and Dogie Oil Co. claim same by virtue of prior valid applications, which are described above, and for which leases were executed by the Honorable J. H. Walker, General Land Commissioner. Tyler claims to have prior rights over all others by reason of filing his application prior to the others. Stanolind Oil & Gas Co. claims that this Court has already decided the merits of this case in its favor, and among the cases cited in support of such contention are: Federal Royalty Co. v. State, 128 Texas 324, 98 S. W. (2d) 993; Stanolind Oil & Gas Co. et al v. State of Texas, 129 Texas 547, 101 S. W. (2d) 801, id. 104 S. W. (2d) 1; Turner v. Smith, 122 Texas 338, 61 S. W. (2d) 792; Douglas Oil Co. v. State of Texas, 122 Texas 377, 61 S. W. (2d) 807, id. 70 S. W. (2d) 452.

We shall not discuss each of the decisions cited, but will merely refer to Stanolind Oil & Gas Co. et al v. State of Texas, 129 Texas 547, 101 S. W. (2d) 801, id. 104 S. W. (2d) 1, and Federal Royalty Co. v. State, of Texas, 128 Texas 324, 98 S. W. (2d) 993, for a discussion of the questions decided therein.

The case of Stanolind Oil & Gas Co. et al v. State of Texas, supra, involved a strip of land lying between the south line of Surveys 101, 102, 103, and 104, and the north line of Yates Survey No. 34 1/2. The question raised by the State in that case was that said strip of land was vacant public land. The Stanolind Oil & Gas Co. in that suit invoked the rule that the State was estopped on account of its actions to claim such vacancy. The ground for such contention was that the State contended that the car spring corner was the S. E. corner of Survey 70. The trial court instructed a verdict against the State. The Court of Civil Appeals remanded the case, on the ground that the location of the S. E. corner of Survey 70 was an issue of fact for the jury to determine. 96 S. W. (2d) 297. This Court held that the trial court correctly instructed a verdict for the defendants and against the State, and reversed the judgment of the Court of Civil Appeals, and affirmed the judgment of the trial court. 129 Texas 547, 101 S. W. (2d) 801. In that opinion this Court held that the State, by virtue of its pleadings and testimony, was estopped to deny that the S. E. corner of Survey 70 was not at the car spring corner, and also held that there was no vacancy between Yates Survey 34 1/2 and the south line of Surveys 101 to 104, as contended for by the State. The pendency of this suit was called to the attention of this Court in motions for rehearing, and this Court expressly declined to determine the questions involved in this suit. 129 Texas 547, 104 S. W. (2d) 1.

The State and those in privity with it invoked in this case the rule that the Stanolind Oil & Gas Co., on account of its admissions and its acts with respect to this land, and the positions taken by it with the State in the courts, is not in position to claim that this land is not vacant public land and not subject to lease by the State for mineral purposes to those legally entitled thereto; and, furthermore, in view of the record in this case, there were no issues of fact to be determined. As a basis for such contention, some of the controlling facts are related below.

An application for survey of this land was filed by the Stanolind Oil & Gas Co., by H. L. George its authorized agent, with the County Surveyor of Pecos County on the 26th day of September, 1934, the material parts of which read:

"By virtue of an Act approved May 29, 1931, I hereby apply for a survey of the following described area believed to be unsurveyed land belonging to the public free school fund with a view to obtaining a mineral lease under said Act.

"Situated in Pecos County, Texas, about 56 miles from the county site. Said tract is bounded as follows:

"On the North by Runnels County School land No. 3
"On the East by John H. Tyler No. 1, S. F. 13476
"On the South by Survey No. 34 1/2, I. G. Yates
"On the West by Survey No. 104, T. C. Ry. Co., Block 194."

Based upon such application to survey and lease such land, H. L. George certified that he surveyed such land, and had sent to the General Land Office a plat and field notes of such land. The field notes read as follows:

"FIELD NOTES of a survey of 26.23 acres of land made for Stanolind Oil & Gas Co. by virtue of their application to lease filed Sept. 26, 1934.

"Variation 10 degrees 45" E. situated in Pecos County, about 58 miles N. E. from county site, beginning at an angle iron in stone mound, set for the S. W. cor. of John H. Tyler No. 1 S. F. 13476, in the N. line of Sur. No. 34 1/2, for S. E. corner of this survey.

"Thence North with the West line of said John H. Tyler Survey 1209 varas to an iron pin in st. mid set for the N. W. cor. of said John M. Tyler Survey, in the South line of Runnels County School Land No. 3, for N. E. cor. of this survey.

"Thence West 122.5 varas to stake set for the N. E. cor. of Sur. No. 104, Blk. 194, T. C. Ry. Co., and the N. W. cor. of this survey.

"Thence South with the East line of said Sur. No. 104, 1209 varas to a stake set for the S. E. cor. of said Sur. No. 104, and the S. W. cor. of this survey.

"Thence East 122.5 varas to the place of beginning."

The Hon. J. H. Walker, Land Commissioner, rejected such application as being void.

During the trial George also testified at length with reference to the location of the S. E. corner of Survey 70 and his running the various lines to establish the field notes in the application to lease by the Stanolind Oil & Gas Co. He drew a plat, showing how he had arrived at his conclusions. He stated that the tract of land in controversy was not within Survey 104, but that it lay east of it; that the area had been run out from the S. E. corner of Survey 70 as identified and reported by him as agent of the Stanolind Oil & Gas Co. He also testified that the East line of Survey 104 was located as stated by him. He also testified that he had located Survey 34 1/2 on the ground, and after coming 7600 varas east from the southwest corner of R. C. S. L. No. 3 located with reference to the point

he had determined to be the true S. E. corner of Survey 70, he was 236.5 varas west of the most northerly west line of Survey 34 1/2; and after deducting 114 varas, which is the width of Tyler No. 1 survey, there remained a vacancy.

It clearly appears that George was the agent of the Stanolind Oil & Gas Co., and was authorized to act as such agent in this matter. His testimony was offered for the purpose of showing that this was vacant land; and Stanolind Oil & Gas Co. did not undertake to contradict his testimony. There is no reservation or qualification in the application of the Stanolind Oil & Gas Co., or in the testimony of George. In short, whether the real S. E. corner of Survey 70 is located at the car spring corner or at the place designated by George becomes immaterial, as between the parties here, because the Stanolind Oil & Gas Co. has, by its acts and the testimony introduced, admitted that the land in dispute lies east of Survey 104 and is not in its lease, is vacant, and belongs to the State.

The trial court had before it the application made by the Stanolind Oil & Gas Co. for a lease on this strip of land, based upon the claim that the east line of Survey 104, located in this manner, was 122.5 varas west of the west line of Tyler Survey No. 1. George was the only surveyor who testified with respect to the true location of the S. E. corner of Survey 70. The Stanolind Oil & Gas Co. offered no witness who testified to the contrary, but based its defense to the claim of vacancy upon the ground that Dod's monumented corner for R. C. S. L. No. 3 was controlling, and that the true location of the S. E. corner of Survey 70 was an immaterial issue. The trial court instructed a verdict against the Stanolind Oil & Gas Co., and entered judgment accordingly.

The judgment of the trial court further provides:

"It has not been necessary in determining this controversy to locate on the ground either the south line of Runnels County School Land Survey No. 3, nor the east line or eastern corners of Survey No. 104, T. C. Ry. Co. Surveys, other than to determine that such lines and corners are not located as to conflict with the area herein adjudged to the State, which fact has been established here by the undisputed evidence."

The trial court, after establishing the rights of the State in the entire tract, 122.5 varas in width and 1208.9 varas in length, as not included in prior grants, held the aplication for lease upon such land by the Stanolind Oil & Gas Co. to be invalid; and, furthermore, after holding against Tyler in favor of Cardinal Oil Co. and Dogie Oil Co., held that Bryant had a

superior right to obtain from the State a mineral lease off the west side of this tract, 50.9 varas in width and bounded as shown by the sketch inserted herein. After the rendition of the judgment by the trial court, the Land Commissioner executed a lease to Bryant covering this area.

■ The Court of Civil Appeals correctly held that when Tyler accepted the patent issued by the State to Tyler's Survey No. 1, under his application, his acceptance of the patent exhausted all rights under such application. Miller v. Yates, 122 Texas 435, 61 S. W. (2d) 767; Holmes v. Yates, 122 Texas 428, 61 S. W. (2d) 771. This holding disposed of the rights acquired by Tyler in his original inquiry filed December 15, 1926.

■ The Court of Civil Appeals also correctly held that the filing made by Stanolind Oil & Gas Co. was invalid, because it was made by a licensed State land surveyor, in violation of Articles 5272-5281, Revised Civil Statutes.

■ Chief Justice McClendon, speaking for the Court of Civil Appeals, clearly disposed of this question in the following language: "The Stanolind urges that, in any event, it was entitled to an award under its application to lease. The state contends that this application was void because George, by whom it was made, was a licensed land surveyor. We sustain the state's contention in this regard. The powers, duties, and obligations of licensed land surveyors are set forth in chapter 2, title 86, R. C. S. Particularly we refer to articles 5272-5281, inclusive. From these, it will be observed, a licensed land surveyor is a public official, required to take an oath of office and have an official seal. The license may be revoked if the licensee 'shall be found by the Board to have unlawfully given information concerning any undisclosed public land or to have been directly or indirectly interested in the purchase or in the acquisition of title to any public land.' Article 5273. Article 5278 requires that: 'If a licensed surveyor shall discover an undisclosed tract of public land he shall not make known that fact to anyone except to such person as may have it enclosed, but he shall forward to the Land Office a report of the existence of such tract and the acreage therein, and its probable value.'

"The policy of the state with reference to dealings by its public surveyors in its public lands is announced in the following cases: Wills v. Abbey, 27 Texas 202; Cotulla v. Laxson, 60 Texas 443; State v. Thompson, 64 Texas 690; DeShazo v. Eubank, Tex. Com. App., 222 S. W. 976. All of the acts of such

surveyors are held to be void where they have any interest in the subject matter involved.

■ "The Stanolind contends that the principle announced in these cases applies only where the surveyor has some interest, direct or indirect, in the ultimate title emanating from the State; that George had no such interest, nor in fact any interest in the application, but was only acting as agent for the Stanolind. We think it clear in principle that his disqualification to act as principal in the application also disqualified him from acting as agent. Moreover, since the land here involved was not inclosed, it was a breach of official duty to disclose to any one but the land commissioner the fact that the land was public domain. The application by him on behalf of the Stanolind manifestly constituted such breach of official duty. By the express terms of the statute creating such duty, he thereby became the agent of the state to conceal the facts from the Stanolind and reveal them to the proper state official. He could not, therefore, act for the Stanolind, whose interests were antagonistic to those of the state."

■ The Court of Civil Appeals also correctly held that the trial court did not err in overruling a plea in abatement filed by the Stanolind Oil & Gas Co., based upon the pendency of a suit filed by that Company in the Federal Court at El Paso against the State's lessees under the mineral leases. The State was not a party to that suit, and unless the State gave its consent it could not be made a party to that suit. Such consent was not given, and the State had the right to file this suit, in order to adjudicate the rights of the parties to this tract of land.

Stanolind Oil & Gas Co. now contends that an issue of fact was presented to the trial court with respect to the true location of the S. E. corner of Survey 70, and the Court of Civil Appeals reversed this cause on that contention.

The question presented to the trial court for decision was as to whether or not the east line of Survey 104, when properly located on the ground, is as much as 122.5 varas west of the west line of Tyler No. 1. The trial court found in effect that the east line of Survey 104, when properly located on the ground, failed to coincide with the west line of Tyler No. 1 by at least 122.5 varas, and based such finding upon the uncontradicted evidence of H. L. George, the engineer and surveyor of the Stanolind Oil & Gas Co., and the admissions of that company.

It will be noted that the field notes prepared by George for the Stanolind Oil & Gas Co., which were recorded and became public records, exactly covered the land involved in this suit, and showed that the east line of Survey 104, on which it holds a mineral lease, is 122.5 varas wide and is west of the west marked line of the Tyler Survey. It clearly appeared from the records and testimony introduced that the area in question was unoccupied and unfenced; that prior to this suit by the State for this area, the Stanolind Oil & Gas Co. had caused the four corners to be marked, and also contended that same was vacant public land and subject to lease by the State. It is undisputed that the Stanolind Oil & Gas Co. did not undertake to obtain a lease from the State on this land on the ground that it was part of Survey 104, and that such lease was sought for the purpose of protecting the rights of the fee owners thereof and those holding mineral leases thereon. It is also undisputed that the Stanolind Oil & Gas Co. failed to obtain from the State for its sole benefit such lease, because the steps taken by such Company were in direct violation of the law; and, acting on the opinion of the Attorney General, the Land Commissioner rejected such application. Since the Stanolind Oil & Gas Company, which held a mineral lease on Survey 104 or part thereof, contended and represented to the State that the area of land was vacant and subject to lease, the Land Commissioner, in view of such statements and application, held that such land was vacant and executed leases thereon to the parties above mentioned, who complied with the statutes. The Stanolind Oil & Gas Company has an oil well near the east line of Survey 104; and oil wells have been drilled on each of the tracts embraced in the area of land in controversy. It furthermore appears that Tyler and the Stanolind Oil & Gas Company had no valid claims to lease such land prior to the rights acquired by Bryant, Dogie Oil Company and Cardinal Oil Company.

The reports of Dod and other exhibits were introduced in evidence by the Stanolind Oil & Gas Company, but were never read to the court or to the jury. When such documents are considered in the light of the undisputed evidence in this case, we think, as between the parties hereto, an issue of fact as to the true location of the S. E. corner of Survey 70 becomes immaterial.

The undisputed evidence introduced in this case shows, as between the parties to this suit, that this area is vacant public land, and that there was no issue of fact on this question for the jury to determine. The evidence is also undisputed that, if this area is vacant land, the General Land Commissioner has

awarded same to the proper parties, in accordance with the provisions of the statutes. The trial court did not think it necessary to locate on the ground the south line of Runnels County School Land Survey No. 3, nor the east line of Survey No. 104, but did determine that such lines and corners are not located so as to conflict with the land awarded in this suit to the State. The effect of such judgment is that all of the area involved here was vacant public land.

■ It is made to appear that there are other persons, not parties to this suit, who own rights in such and other surveys, and it is earnestly contended that such rights owned by those who are not parties to this suit should not be adjudicated here in their absence. We agree that those persons should not be denied the privilege, if they so desire, of having their rights in such surveys properly determined.

The decision of this Court in this case relates only to the rights of the parties to this suit to the land in controversy, and this decision shall not be construed as reconstructing the boundary lines of any other survey; nor shall the determination of the rights of the parties to this suit to the land involved here be construed as adjudicating the rights of others not parties to this suit.

We further hold that, if it should be determined that all or any of the land involved here is embraced in other surveys, all rights held by any party or parties, including the Stanolind Oil & Gas Company, in such lands embraced in such survey or surveys shall not be affected by this decision.

■ It is the policy of the law to avoid needless litigation. As said by the Supreme Court of the United States in the case of Baldwin v. Traveling Men's Assn., 283 U. S. 522: "Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." This same rule has been reaffirmed recently by the Supreme Court of the United States in the case of Evelyn Treinines v. Sunshine Mining Co. et al, delivered November 6, 1939.

If the land involved here is vacant public land, the State and those holding under the State, parties to this suit, are entitled to judgment therefor, as held by the trial court. There is no need to litigate that question again.

Therefore, the judgment of the Court of Civil Appeals is reversed, and the judgment of the trial court is reformed in

accordance with this decision, and such judgment, as reformed, is affirmed.

Opinion delivered November 22, 1939.

ON MOTION FOR REHEARING.

After a careful consideration of the motions for rehearing filed in this cause, we have decided to modify the original judgment rendered in this cause.

We have set out in our original opinion the method whereby the Stanolind Oil & Gas Company attempted to obtain a lease from the State of Texas on the land in controversy. The evidence in this cause consists of records made by the Stanolind Oil & Gas Company and the testimony of its surveyor regarding his efforts to obtain such lease, and which testimony on this issue is undisputed. The Stanolind Oil & Gas Company made no effort to explain or modify the statements contained in such records to the effect that such land was vacant and was subject to lease.

The Stanolind Oil & Gas Company by its acts unquestionably admitted such land to be vacant and subject to lease. After the introduction of much testimony, the trial court determined that the land in controversy was vacant and that there was no issue of fact for the jury to determine. The General Land Commissioner, acting on the record before him, executed leases on the land involved here in accordance with the provisions of the statutes.

█ The authorities hold that where a litigant admits positive and definite facts, which if true would defeat his right to recover, and such statements or admissions are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, he is conclusively bound by such admissions, and cannot successfully complain if the court directs a verdict against him. Watkins Co. et al v. King (Tex. Civ. App.) 83 S. W. (2d) 405; Southern Surety Co. v. Inabnit et al. (Tex. Civ. App.), 1 S. W. (2d) 412; Mhoon v. Cain, 77 Texas 316, 14 S. W. 24; Nerio v. Christen (Tex. Civ. App.), 189 S. W. 1038; Smith v. Boston Elevated Ry. Co. (1st Cir.), 184 F. 387, 37 L. R. A. (N. S.), 429; Hubbs-Diggs Co. v. Mitchell (Tex. Civ. App.), 256 S. W. 702; Stephenson v. Barrow (Tex. Com. App.), 15 S. W. (2d) 575, 576, 577; Broad River Lumber Co. v. Middleby (4 Cir.) 194 F. 817, 821, par. 3; Harlow v. Leclair, 82 N. H. 506, 136 A. 128, 50 A. L. R.

973, 976, 977, and note page 979 et seq.; 17 Tex. Jur., p. 577 et seq.

■ We again reiterate the fundamental rule that it is the purpose of the law to put an end to litigation and expedite the administration of justice. This Court, in the recent case of Permian Oil Co. v. Smith et al, 129 Texas 413, 449, 107 S. W. (2d) 564, 567, 111 A. L. R. 1175, said: "It must be borne in mind that the purpose of the law remains constant to prevent the failure of justice as the result of permitting the retrial between the same parties or their privies of a cause of action or of an issue which has been finally disposed of."

We hold that, if it should be determined that all or any of the land involved here is embraced in other surveys, all rights held by any party or parties, not parties to this suit, in such lands embraced in such survey or surveys shall not be affected by this decision.

The motion for rehearing filed by plaintiffs in error, Stanolind Oil & Gas Company et al, is hereby overruled. The motion for rehearing filed by defendants in error, State of Texas et al, is granted in part, as shown by the following reformation of the judgment of the District Court, but in all other respects said motion is overruled.

It is ordered and decreed that the judgment of the District Court be reformed so that same shall not prejudice or affect the rights, if any, of persons not parties to this suit with respect to the tract of land described in the District Court judgment, and such judgment shall not adjudicate or affect the boundaries of any land except that heretofore described in the District Court judgment. As thus reformed, the judgment of the District Court is affirmed, and the judgment of the Court of Civil Appeals is reversed.

Chief Justice Moore disqualified and not sitting.

Opinion delivered December 19, 1940.

Second motion for rehearing overruled January 29, 1941.